## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| COREY DAHLBECK and MARIA RIVERA, Individually and for Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| ATHENA HEALTH CARE ASSOCIATES, INC. d/b/a ATHENA HEALTH CARE SYSTEMS | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Corey Dahlbeck ("Dahlbeck") and Maria Rivera ("Rivera") (together, "Plaintiffs") bring this class action to recover unpaid wages and other damages from Athena Health Care Associates, Inc. d/b/a Athena Health Care Systems ("Athena").

2.      Dahlbeck worked for Athena as a Licensed Practice Nurse ("LPN") at Athena's Summit Commons Rehabilitation & Health Care Center in Providence, Rhode Island.

3.      Rivera worked for Athena as an LPN at Athena's facility in Ridgefield, Connecticut.

4.      Like the Putative Class Members (as defined below), Plaintiffs regularly worked more than 40 hours in a week.

5.      But Athena did not pay them for all the hours they worked.

6.      Instead, Athena automatically deducted 30 minutes a day from these employees' work time for so-called "meal breaks."

7.      Plaintiffs and the Putative Class Members were thus not paid for that time.

8.      But Plaintiffs and the Putative Class Members did not actually receive *bona fide* meal breaks.

9.      Instead, Athena required Plaintiffs and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Athena continuously subjected them to work-related interruptions during their unpaid "meal breaks."

10.      Athena's auto-deduction policy violates the Fair Labor Standards Act ("FLSA"), the Rhode Island Minimum Wage Act ("RIMWA"), and/or the Connecticut Minimum Wage Act ("CMWA") by depriving Plaintiffs and the Putative Class Members of overtime wages for all overtime hours worked.

11.      Likewise, Athena's auto-deduction policy violates the and the Rhode Island Payment of Wages Act ("RIPWA") and/or the Connecticut Wage Payment Law ("CWPL") by depriving Plaintiffs and the Putative Class Members of all their earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

12.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13.      The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.      This Court has general personal jurisdiction over Athena because Athena is a domestic corporation that maintains its headquarters in Farmington, Connecticut.

15.      Venue is proper because ASC maintains its headquarters and principal place of business in Farmington, Connecticut, which is in this District. 28 U.S.C. § 1391(b)(1).

### PARTIES

16.      Dahlbeck worked for Athena as an LPN at Athena's Summit Commons Rehabilitation & Health Care Center in Providence, Rhode Island from approximately November 2020 until June 2022.

2

17.     Throughout his employment, Athena classified Dahlbeck as non-exempt and paid him on an hourly basis.

18.     Throughout his employment, Athena subjected Dahlbeck to its common practice of automatically deducting 30 minutes a day from his recorded work time and wages for so-called "meal breaks."

19.     But throughout his employment, Dahlbeck did not actually receive *bona fide* meal breaks.

20.     Dahlbeck's written consent is attached as **Exhibit 1**.

21.     Rivera worked for Athena as an LPN at Athena's facility in Ridgefield, Connecticut from approximately July 2017 until March 2019 and again from approximately March 2021 until July 2021.

22.     Throughout her employment, Athena classified Rivera as non-exempt and paid her on an hourly basis.

23.     Throughout her employment, Athena subjected Rivera to its common practice of automatically deducting 30 minutes a day from her recorded work time and wages for so-called "meal breaks."

24.     But throughout her employment, Rivera did not actually receive *bona fide* meal breaks.

25.     Rivera's written consent is attached as **Exhibit 2**.

26.     Plaintiffs bring this class and collective action on behalf of themselves and other similarly situated hourly, non-exempt Athena patient care employees who were subject to Athena's automatic meal break deduction policy.

27.     Athena automatically deducts 30 minutes a day from these patient care employees' recorded work time and wages for so-called "meal breaks."

28.    But Athena uniformly fails to provide, and these patient care employees do not actually receive, *bona fide* meal breaks.

29.    Instead, Athena uniformly requires these patient care employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

30.    Thus, Athena uniformly deprives these patient care employees of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, in violation of the FLSA, RIMWA, RIPWA, CMWA, and/or CWPL.

31.    The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Athena at any Athena facility[1] who received a meal period deduction at any time during the past 3 years ("FLSA Collective Members").**

32.    Dahlbeck also seeks to represent such a class under the RIMWA and RIPWA pursuant to FED. R. CIV. P. 23.

33.    The Rhode Island Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Athena at any Athena facility in Rhode Island[2] who received a meal period deduction at any time during the past 3 years ("Rhode Island Class Members").**

34.    Rivera also seeks to represent such a class under the CMWA and CPWL pursuant to FED. R. CIV. P. 23.

35.    The Connecticut Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Athena at any Athena facility in Connecticut[3] who received a**

---

[1] *See* https://athenahealthcare.com/locations/ (identifying all Athena locations) (last visited August 18, 2023).

[2] *See* https://athenahealthcare.com/locations/?location=location-ri (identifying all Athena locations in Rhode Island) (last visited August 18, 2023).

[3] *See* https://athenahealthcare.com/locations/?location=location-ct (identifying all Athena locations in Connecticut) (last visited August 18, 2023).

**meal period deduction at any time during the past 3 years ("Connecticut Class Members").**

36.     The FLSA Collective Members, the Rhode Island Class Members, and the Connecticut Class Members are collectively referred to as the "Putative Class Members."

37.     Athena is a Connecticut corporation that maintains its headquarters in Farmington, Connecticut.

38.     Athena may be served with process by serving its registered agent: **Murtha Cullina, MCR&P Service Corporation, 280 Trumbull Street, Hartford, Connecticut 06103**, or wherever she may be found.

COVERAGE UNDER THE FLSA

39.     At all relevant times, Athena was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40.     At all relevant times, Athena, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

41.     At all relevant times, Athena was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Athena, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

42.     At all relevant times, Athena was also an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical tools, and personal protective equipment – that have been moved in or produced for commerce.

43.     At all relevant times, Athena has had an annual gross volume of sales made or business done of not less than $500,000 each year.

44.     At all relevant times, Plaintiffs and the Putative Class Members were Athena's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

45.     At all relevant times, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

46.     Athena uniformly deducted 30 minutes per shift from Plaintiffs' and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

47.     As a result, Athena uniformly failed to pay Plaintiffs and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

48.     Athena's automatic meal break deduction policy, which deprives Plaintiffs and the Putative Class Members of overtime compensation for the weeks in which these workers work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

FACTS

49.     Athena bills itself as "a recognized leader in senior care as well as one of the largest managers of skilled nursing services in Connecticut, Massachusetts, and Rhode Island."[4]

50.     "Athena provides skilled nursing care and short-term, post-hospital care and rehabilitation in our health care centers, as well as assisted living services, and home health, hospice care, and private duty program services" across Southern New England, including in Rhode Island and Connecticut.

51.     To meet these business objectives, Athena hires patient care workers (including Plaintiffs and the Putative Class Members) to work in its various healthcare facilities.

---

[4] https://athenahealthcare.com/ (last visited August 18, 2023).

52.     Athena owns and/or operates all the healthcare facilities where Plaintiffs and the Putative Class Members work.

53.     Athena's facilities have common ownership and/or management.

54.     Indeed, Athena has a single, system-wide Senior Management Team that covers all its facilities.[5]

55.     Athena facilities also have a centralized human resources department and/or centralized control over labor relations.

56.     Athena controls and dictates Plaintiffs' and the Putative Class Members' rates and methods of pay, regardless of facility.

57.     Athena maintains control, oversight, and direction over Plaintiffs and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, timekeeping, performance standards, and other employment policies.

58.     Likewise, Athena maintains control, oversight, and direction of Plaintiffs and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

59.     Indeed, Athena dictates the uniform hiring standards and all other employment policies and practices in place at its various healthcare facilities where Plaintiffs and the Putative Class Members work.

60.     Athena has the authority to hire, fire, and discipline the employees working at its healthcare facilities, including Plaintiffs and the Putative Class Members.

---

[5] *See* https://athenahealthcare.com/about-us/our-management-team/ (last visited August 18, 2023).

61.     Athena controls Plaintiffs' and the Putative Class Members' schedules and assignments.

62.     Athena controls Plaintiffs' and the Putative Class Members' work.

63.     Athena requires Plaintiffs and the Putative Class Members to follow Athena's uniform and system-wide policies, procedures, and specifications, regardless of facility.

64.     Plaintiffs' and the Putative Class Members' work must strictly adhere to the uniform quality standards put in place by Athena, regardless of facility.

65.     Athena prohibits Plaintiffs and the Putative Class Members from varying their job duties outside Athena's uniform guidelines and expectations and requires Plaintiffs and the Putative Class Members to follow Athena's system-wide policies, procedures, and directives.

66.     Without the patient care work Plaintiffs and the Putative Class Members perform, Athena would not be able to meet its business objectives of operating healthcare facilities across Southern New England.

67.     Thus, Plaintiffs' and the Putative Class Members' work is integral to Athena's business, regardless of facility.

68.     Plaintiffs and the Putative Class Members rely on Athena for work and compensation.

69.     Plaintiffs and the Putative Class Members do not substantially invest in the tools, materials, and equipment required to complete their patient care jobs.

70.     Rather, Athena incurs the large-scale business and operating expenses like payroll, marketing, healthcare facilities, medical equipment and tools, etc. that Plaintiffs and the Putative Class Members need to perform their patient care jobs.

71.     Athena sets Plaintiffs' and the Putative Class Members' work schedule, which necessarily prohibits them from working other jobs while working for Athena.

72.    Athena also maintains employment records for Plaintiffs and the Putative Class Members.

73.    In sum, Plaintiffs and the Putative Class Members are Athena's employees.

74.    Athena uniformly classifies the patient care employees who work in its healthcare facilities, including Plaintiffs and the Putative Class Members, as non-exempt from overtime and pays them on an hourly basis.

75.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

76.    For example, Dahlbeck worked for Athena as an LPN at Athena's Summit Commons Rehabilitation & Health Care Center in Providence, Rhode Island from approximately November 2020 until June 2022.

77.    Throughout his employment, Athena classified Dahlbeck as non-exempt and paid him on an hourly basis.

78.    Specifically, during the course of his employment, Athena agreed to pay Dahlbeck an hourly rate ($38/hour) for all the hours he worked up to 40 hours in a workweek.

79.    Throughout his employment, Athena subjected Dahlbeck to its common practice of automatically deducting 30 minutes a day from his recorded work time and wages for so-called "meal breaks," regardless of whether he actually received a *bona fide* meal break.

80.    But throughout his employment, Dahlbeck did not actually receive *bona fide* meal breaks.

81.    Similarly, Rivera worked for Athena as an LPN at Athena's facility in Ridgefield, Connecticut from approximately July 2017 until March 2019 and again from approximately March 2021 until July 2021.

82.     Throughout her employment, Athena classified Rivera as non-exempt and paid her on an hourly basis.

83.     Throughout her employment, Athena subjected Rivera to its common practice of automatically deducting 30 minutes a day from her recorded work time and wages for so-called "meal breaks."

84.     But throughout her employment, Rivera did not actually receive *bona fide* meal breaks.

85.     As LPNs, Plaintiffs' primary responsibilities included providing direct patient care to the patients and residents at their respective Athena facilities, such as monitoring patients, checking vital signs, administering medications, charting all treatments, helping patients with eating, dressing, and bathing, and generally assisting doctors and other patient care staff.

86.     Plaintiffs and the Putative Class Members perform their jobs under Athena's supervision and use materials, equipment, and technology approved and supplied by Athena.

87.     Athena requires Plaintiffs and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

88.     At the end of each pay period, Plaintiffs and the Putative Class Members receive wages from Athena that are determined by common systems and methods that Athena selected and controlled.

89.     Athena requires Plaintiffs and the Putative Class Members to record their hours worked using Athena's timeclock system.

90.     Further, Athena subjects Plaintiffs and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked and wages for meal periods.

91.     Specifically, Athena automatically deducts 30 minutes a day from Plaintiffs' and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

92.     Athena automatically deducts this time regardless of whether Plaintiffs and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

93.     Athena simply assumes Plaintiffs and the Putative Class Members receive *bona fide* meal breaks each shift they work.

94.     But Plaintiffs and the Putative Class Members do not actually receive *bona fide* meal breaks.

95.     Instead, Athena requires Plaintiffs and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

96.     And Athena continuously subjects Plaintiffs and the Putative Class Members to work interruptions during their unpaid meal breaks.

97.     In fact, even when Plaintiffs and the Putative Class Members attempt to take a meal break, Athen requires them to remain at their respective facility and/or carry a cellphone so they can be quickly contacted and return to work in case of emergencies at any time.

98.     Because of these constant work interruptions, Plaintiffs and the Putative Class Members are not free to engage in personal activities during their unpaid meal breaks.

99.     Rather, during their unpaid "meal breaks," Plaintiffs and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

100.    Thus, Plaintiffs and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Athena's—not these employees'—predominant benefit.

101.    This unpaid time is compensable under the FLSA, RIMWA, and/or CMWA because Athena knew, or should have known, that (1) Plaintiffs and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to

interruptions with work duties during any attempted meal break, (3) they were not completely relieved of all duties during their meal breaks, (4) they entirely skipped their meal break due to work demands, (5) the meal break was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal breaks because of constant work interruptions, (7) they remained on Athena's premises and/or were working under Athena's supervision during their meal break, and/or (8) they spent their unpaid meal breaks substantially performing their regular patient care duties for Athena's predominant benefit.

102.    The unpaid time is also compensable under the RIPWA and/or CPWL because Athena agreed to pay Plaintiffs and the Putative Class Members set hourly rates of pay for all hours worked up to 40 hours in a workweek, and Athena failed to pay these employees their earned wages for these on-duty "meal breaks."

103.    Athena failed to exercise its duty as Plaintiffs' and the Putative Class Members' employer to ensure these employees were not performing work that Athena did not want performed during their unpaid "meal breaks."

104.    And Athena knows Plaintiffs and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Athena expects and requires these employees to do so.

105.    Indeed, Plaintiffs and the Putative Class Members complained to Athena's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

106.    Thus, Athena requested, suffered, permitted, or allowed Plaintiffs and the Putative Class Members to work during their unpaid "meal breaks."

107.    Despite accepting the benefits, Athena did not pay Dahlbeck and the Putative Class Members for the compensable work they performed during their "meal breaks."

108. Thus, under Athena's uniform automatic meal break deduction policy, Plaintiffs and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA, RIMWA, and/or CMWA.

109. Likewise, under Athena's uniform automatic meal break deduction policy, Plaintiffs and the Putative Class Members are deprived earned wages (at their agreed hourly rates of pay) for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the RIPWA and/or CWPL.

110. In addition to excluding time from these employees' wages for "meal breaks," Athena also uniformly subjects Plaintiffs and the Putative Class Members to its automatic rounding policy.

111. Specifically, Athena automatically rounds Plaintiffs' and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for Athena's—not these employees'—primary benefit.

112. In fact, in conjunction with Athena's automatic rounding policy, Athena also prohibits Plaintiffs and the Putative Class Members from clocking in and out for their shifts more than 7 minutes of their scheduled shift start and end times.

113. By enforcing these policies together, Athena ensures its automatic rounding policy *always* benefits Athena—and never Plaintiffs and the Putative Class Members.

114. Thus, under Athena's uniform automatic rounding policy, Plaintiffs and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA, RIMWA, and/or CMWA.

115. Likewise, under Athena's uniform automatic rounding policy, Plaintiffs and the Putative Class Members are deprived earned wages (at their agreed hourly rates of pay) for all hours

worked in workweeks in which they work fewer than 40 hours in violation of the RIPWA and/or CWPL.

116.    Dahlbeck worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

117.    For example, during one workweek in 2022, Dahlbeck worked 64 hours (not including the hours he worked during his unpaid meal breaks).

118.    Rivera also worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

119.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

120.    Indeed, throughout the relevant period, Plaintiffs and the Putative Class Members typically worked 8- to 16-hour shifts for 3 to 7 days a week.

121.    And Plaintiffs and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their job duties and patient care responsibilities for Athena's predominate benefit.

122.    As a result, Plaintiffs and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

123.    When Plaintiffs and the Putative Class Members worked more than 40 hours in a workweek, Athena did not pay them overtime wages for all overtime hours worked because Athena failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA, RIMWA, and/or CMWA.

124.    Likewise, when Plaintiffs and the Putative Class Members worked fewer than 40 hours in workweek, Athena did not pay them all their earned wages (at their agreed hourly rates) for all hours worked because Athena failed to include time these employees worked "off the clock"

during their meal breaks in their total number of hours worked in a given workweek in violation of the RIPWA and/or CWPL.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

125.    Plaintiffs incorporate all other paragraphs by reference.

126.    Plaintiffs brings their claims as a class and collective action on behalf of themselves and the Putative Class Members.

127.    The Putative Class Members were victimized by Athena's automatic meal break deduction policy, which is in willful violation of the FLSA, Rhode Island wage laws, and Connecticut wage laws.

128.    Other Putative Class Members worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to Athena's same automatic meal break deduction policy.

129.    Based on their experiences with Athena, Plaintiffs are aware Athena's illegal practices were imposed on the Putative Class Members.

130.    The Putative Class Members are similarly situated in all relevant respects.

131.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

132.    Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

133.    Rather, the Putative Classes are held together by Athena's uniform automatic meal break deduction policy, which systematically deprived the Putative Class Members of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

134.    Athena's failure to pay wages and overtime wages as required by the FLSA, Rhode Island wage laws, and/or Connecticut wage laws results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

135.    Athena's records reflect the number of hours the Putative Class Members recorded they worked each week.

136.    Athena's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

137.    Likewise, Athena's records show the specific time the Putative Class Members punched in and out for their shifts.

138.    And Athena's records also show that it automatically rounded the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments (for Athena's benefit).

139.    The back wages owed to Plaintiffs and the Putative Class Members can be calculated using the same formula applied to the same records.

140.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Athena's records, and there is no detraction from the common nucleus of liability facts.

141.    Therefore, the issue of damages does not preclude class or collective treatment.

142.    Plaintiffs' experiences are therefore typical of the experiences of the Putative Class Members.

143.    Plaintiffs have no interest contrary to, or in conflict with, the Putative Class Members.

144.    Like each Putative Class Member, Plaintiffs have an interest in obtaining the unpaid wages owed to them under state and/or federal law.

145.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

146.    Absent this class and collective action, many Putative Class Members likely will not obtain redress for their injuries, and Athena will reap the unjust benefits of violating the FLSA, Rhode Island wage laws, and Connecticut wage laws.

147.    Further, even if some of the Putative Class Members could afford individual litigation against Athena, it would be unduly burdensome to the judicial system.

148.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

149.    The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

150.    Among the common questions of law and fact are:

a.    Whether Athena engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, Rhode Island wage laws, and/or Connecticut wage laws;

b.    Whether Athena's automatic meal break deduction policy deprived the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, Rhode Island wage laws, and/or Connecticut wage laws;

c.    Whether Athena knew, or had reason to know, the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, Rhode Island wage laws, and/or Connecticut wage laws;

d.    Whether Athena failed to pay the Putative Class Members earned wages (at their agreed hourly rates of pay) for all hours worked, including hours worked during their unpaid meal breaks in violation of the RIPWA and/or CWPL;

e.    Whether Athena failed to pay the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA, RIMWA, and/or CMWA;

f.    Whether Athena's violations of the FLSA, Rhode Island wage laws, and/or Connecticut wage laws resulted from a continuing course of conduct;

g.    Whether Athena's decision to not pay the Putative Class Members' all their earned wages (at their agreed rates of pay) for all hours worked was made in good faith;

h.    Whether Athena's decision not to pay the Putative Class Members overtime wages for all overtime hours worked as made in good faith; and

i.    Whether Athena's violations of FLSA, Rhode Island wage laws, and/or Connecticut wage laws were willful.

151.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

152.    As part of its regular business practices, Athena intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating FLSA, Rhode Island wage laws, and/or Connecticut wage laws with respect to Plaintiffs and the Putative Class Members.

153.    Athena's illegal meal break deduction policy deprived Plaintiffs and the Putative Class Members of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under federal and/or state law.

154.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

155.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

156.    Those similarly situated employees are known to Athena, are readily identifiable, and can be located through Athena's business and personnel records.

### ATHENA'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA, RHODE ISLAND WAGE LAWS, AND/OR CONNECTICUT WAGE LAWS

157.    Plaintiffs incorporate all other paragraphs by reference.

158.    Athena knew it was subject to the FLSA's, RIMWA's, and CMWA's respective overtime provisions.

159.    Athena knew the FLSA, RIMWA, and CMWA required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

160.    Athena also knew it was subject to the RIPWA and CWPL.

161.    Athena knew the RIPWA and CWPL required it to pay employees, including the Putative Class Members, all earned wages for all hours worked at the rates Athena agreed to pay them.

162.    Athena knew the Putative Class Members were non-exempt employees entitled to overtime pay.

163.    Athena knew the Putative Class Members were paid on an hourly basis.

164.    Athena knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Athena required these employees to record their hours worked using its timeclock system.

165.    Athena knew the FLSA, RIMWA, RIPWA, CMWA, and CWPL required it to pay employees, including the Putative Class Members, for all hours these employees performed compensable work.

166.    Athena knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work during their unpaid meal breaks that Athena did not want performed.

167.    Athena knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

168.    Athena knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

169.    Athena knew the Putative Class Members regularly worked during their unpaid meal breaks.

170.    Athena knew it requested, suffered, permitted, or allowed the Putative Class Members were to work during their unpaid meal breaks.

171.    Athena knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for Athena's predominant benefit.

172.    Indeed, Putative Class Members complained to Athena's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

173.    Thus, Athena knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

174.    Nonetheless, Athena automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

175.    Athena decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to

automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

176.    Thus, Athena knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours these employees performed compensable work.

177.    Nonetheless, Athena did not pay the Putative Class Members for all hours these employees performed compensable work, including work performed during their unpaid meal breaks, in violation of the FLSA, Rhode Island wage laws, and/or Connecticut wage laws.

178.    Athena's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

179.    Likewise, Athena's failure to pay the Putative Class Members all their earned wages (at their agreed hourly rates of pay) for all hours worked was neither reasonable, nor was Athena's decision to not pay these employees all their earned wages (at their agreed hourly rates of pay) for all hours worked made in good faith.

180.    Athena knowingly, willfully, and/or in reckless disregard carried out its illegal meal break deduction that deprived Dahlbeck and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA, RIMWA and/or CMWA.

181.    Athena knowingly, willfully, and/or in reckless disregard carried out its illegal meal break deduction that deprived Dahlbeck and the Putative Class Members of earned wages for all hours worked in violation of the RIPWA and/or CWPL.

182.    Athena knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA, Rhode Island wage laws, and/or Connecticut wage laws.

183.    Indeed, Athena and its affiliated entities have been sued previously for failing to pay its employees overtime wages in violation of the FLSA and analogous state wage and hour laws. *See, e.g.*, *Makoni v. Athena Health Care Associates, Inc., et al.*, No. 4:18-CV-40112 (D. Mass.).

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

184.    Plaintiffs incorporate all other paragraphs by reference.

185.    Plaintiffs brings their FLSA claim on behalf of themselves and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

186.    Athena violated, and is violating, the FLSA by employing non-exempt employees (Plaintiffs and the FLSA Collective Members) in a covered enterprise for workweek longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

187.    Athena's unlawful conduct harmed Plaintiffs and the FLSA Collective Members by depriving them of the overtime wages they are owed.

188.    Accordingly, Dahlbeck and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE RIMWA
### (RHODE ISLAND CLASS)

189.    Dahlbeck incorporates all other paragraphs by reference.

190.    Dahlbeck brings his RIMWA claim on behalf of himself and the Rhode Island Class Members pursuant to FED. R. CIV. P. 23.

191.    The conduct alleged violates the RIMWA (R.I. GEN. LAWS §§ 28-12-1, *et seq.*).

192.    At all relevant times, Athena was an "employer" within the meaning, and subject to the requirements, of the RIMWA. *See* R.I. GEN. LAWS § 28-12-2(6).

193.    At all relevant times, Athena employed Dahlbeck and the Rhode Island Class Members as "employees" within the meaning of the RIMWA. *See* R.I. GEN. LAWS § 28-12-2(5).

194.    The RIMWA requires employers, like Athena, to pay employees, including Dahlbeck and the Rhode Island Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* R.I. GEN. LAWS § 28-12-4.1.

195.    Athena violated, and is violating, the RIMWA by failing to pay Dahlbeck and the Rhode Island Class Members overtime compensation for all hours worked after 40 in a workweek, including those hours worked during their unpaid "meal breaks." *See* R.I. GEN. LAWS § 28-12-4.1.

196.    Athena's unlawful conduct harmed Dahlbeck and the Rhode Island Class Members by depriving them of the overtime wages they are owed.

197.    Accordingly, Dahlbeck and the Rhode Island Class Members are entitled to recover their unpaid overtime compensation, compensatory damages, plus liquidated damages in an amount equal to two times their unpaid overtime compensation, as well as prejudgment interest on these amounts at a rate of 12% per annum, plus attorney's fees, costs, and expenses. *See* R.I. GEN. LAWS §§ 9-21-10, 28-12-19, and 28-14-19.2.

## COUNT III
### FAILURE TO PAY ALL WAGES UNDER THE RIPWA
### (RHODE ISLAND CLASS)

198.    Dahlbeck incorporates all other paragraphs by reference.

199.    Dahlbeck brings his RIPWA claim on behalf of himself and the Rhode Island Class Members pursuant to FED. R. CIV. P. 23

200.    The conduct alleged violates the RIPWA (R.I. GEN. LAWS §§ 28-14-1, *et seq.*).

201.    At all relevant times, Athena was an "employer" within the meaning, and subject to the requirements, of the RIPWA. *See* R.I. GEN. LAWS § 28-14-1(3).

202.    At all relevant times, Athena employed Dahlbeck and the Rhode Island Class Members as "employees" within the meaning of the RIPWA. *See* R.I. GEN. LAWS § 28-14-1(2).

203.    The RIPWA requires employers, like Athena, to pay employees, including Dahlbeck and the Rhode Island Class Members, all their earned wages for all hours worked at the rate agreed to by the parties. *See* R.I. GEN. LAWS § 28-14-2.

204.    During the course of their employment, Athena agreed to pay Dahlbeck and each Rhode Island Class Member an hourly rate for all hours they worked up to 40 hours in a workweek.

205.    Dahlbeck and each Rhode Island Class Member accepted Athena's offer.

206.    Thus, Dahlbeck's and the Rhode Island Class Members' hourly rates are "wages" within the meaning of the RIPWA. *See* R.I. GEN. LAWS § 28-14-1(4).

207.    But during the course of their employment, Athena failed to pay Dahlbeck and the Rhode Island Class Members for all the time they worked at the rates Athena agreed to pay them because Athena automatically deducted 30 minutes a day from these employees' recorded work time and wages for so-called "meal breaks."

208.    Athena violated, and is violating, the RIPWA by failing to pay Dahlbeck and the Rhode Island Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed. *See* R.I. GEN. LAWS § 28-14-2.

209.    Athena's failure to pay Dahlbeck and the Rhode Island Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed was not the result of a *bona fide* dispute.

210.    Athena's unlawful conduct harmed Dahlbeck and the Rhode Island Class Members by depriving them of the earned wages they are owed.

211.    Accordingly, Dahlbeck and the Rhode Island Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), compensatory damages, plus liquidated damages in an amount equal to two times their unpaid wages, as well as prejudgment interest on these amounts at a rate of 12% per annum, plus attorney's fees, costs, and expenses. *See* R.I. GEN. LAWS §§ 9-21-10 and 28-14-19.2

### COUNT IV
### FAILURE TO PAY OVERTIME WAGES UNDER THE CMWA
### (CONNECTICUT CLASS)

212.    Rivera incorporates all other paragraphs by reference.

213.    Rivera brings her CMWA claim on behalf of herself and the Connecticut Class Members pursuant to FED. R. CIV. P. 23.

214.    The conduct alleged violates the CMWA (C.G.S.A. § 31-58, *et seq.*).

215.    At all relevant times, Athena was an "employer" within the meaning, and subject to the requirements, of the CMWA. *See* C.G.S.A. § 31-58(d).

216.    At all relevant times, Athena employed Rivera and the Connecticut Class Members as "employees" within the meaning of the CMWA. *See* C.G.S.A. § 31-58(e); *see also* C.G.S.A. § 31-58(g).

217.    The CMWA requires employers, like Athena, to pay employees, including Rivera and the Connecticut Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* C.G.S.A. § 31-60.

218.    Athena violated, and is violating, the CMWA by failing to pay Rivera and the Connecticut Class Members overtime wages for all hours worked after 40 in a workweek, including those hours worked during their unpaid "meal breaks." *See* R C.G.S.A. § 31-60.

219.    Athena's failure to pay Rivera and the Connecticut Class Members overtime wages for all hours worked after 40 in a workweek, including those hours worked during their unpaid "meal breaks," was not the result of a *bona fide* dispute.

220.    Athena's unlawful conduct harmed Rivera and the Connecticut Class Members by depriving them of the overtime wages they are owed.

221.    Accordingly, Rivera and the Connecticut Class Members are entitled to recover their unpaid overtime wages, plus liquidated damages in an amount equal to their unpaid overtime wages, as well as attorney's fees, costs, and expenses. *See* C.G.S.A. § 31-68(a)(1).

**COUNT V**

**FAILURE TO PAY ALL WAGES UNDER THE CWPL**
**(CONNECTICUT CLASS)**

222.    Rivera incorporates all other paragraphs by reference.

223.    Rivera brings her CWPL claim on behalf of herself and the Connecticut Class Members pursuant to FED. R. CIV. P. 23

224.    The conduct alleged violates the CWPL (C.G.S.A. §§ 31-70, *et seq.*).

225.    At all relevant times, Athena was an "employer" within the meaning, and subject to the requirements, of the CWPL. *See* C.G.S.A. § 31-71a(1).

226.    At all relevant times, Athena employed Rivera and the Connecticut Class Members as "employees" within the meaning of the CWPL. *See* C.G.S.A. § 31-71a(2).

227.    The CWPL requires employers, like Athena, to pay employees, including Rivera and the Connecticut Class Members, all their earned wages for all hours worked at the rate agreed to by the parties. *See* C.G.S.A. § 31-71b.

228.    During the course of their employment, Athena agreed to pay Rivera and each Connecticut Class Member an hourly rate for all hours they worked up to 40 hours in a workweek.

229.    Rivera and each Connecticut Class Member accepted Athena's offer.

230.    Thus, Rivera's and the Connecticut Class Members' hourly rates are "wages" within the meaning of the CWPL. *See* C.G.S.A. § 31-71a(3).

231.    But during the course of their employment, Athena failed to pay Rivera and the Connecticut Class Members for all the time they worked at the rates Athena agreed to pay them because Athena automatically deducted 30 minutes a day from these employees' recorded work time and wages for so-called "meal breaks."

232.    Athena violated, and is violating, the CWPL by failing to pay Rivera and the Connecticut Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed. *See* C.G.S.A. § 31-71b.

233.    Athena's failure to pay Rivera and the Connecticut Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed was not the result of a *bona fide* dispute.

234.    Athena's unlawful conduct harmed Rivera and the Connecticut Class Members by depriving them of the earned wages they are owed.

235.    Accordingly, Rivera and the Connecticut Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), plus liquidated damages in an amount equal to their unpaid wages, as well as attorney's fees, costs, and expenses. *See* C.G.S.A. § 31-72.

### JURY DEMAND

236.    Plaintiffs demand a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this action as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective

Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Plaintiffs and their counsel to represent the interests of the Rhode Island Class Members and Connecticut Class Members;

d.      An Order pursuant to Section 16(b) of the FLSA finding Athena liable for unpaid overtime wages due to Plaintiffs and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid overtime wages;

e.      An Order finding Athena liable to Dahlbeck and the Rhode Island Class Members for unpaid overtime wages owed under the RIMWA, plus liquidated damages in an amount equal to two times their unpaid wages, as well as prejudgment interest on these amounts at a rate of 12% per annum;

f.      An Order finding Athena liable to Dahlbeck and the Rhode Island Class Members for unpaid earned wages owed under the RIPWA, plus liquidated damages in an amount equal to two times their unpaid wages, as well as prejudgment interest on these amounts at a rate of 12% per annum;

g.      An Order finding Athena liable to Rivera and the Connecticut Class Members for unpaid overtime wages owed under the CMWA, plus liquidated damages in an amount equal to their unpaid overtime wages;

h.      An Order finding Athena liable to Rivera and the Connecticut Class Members for unpaid earned wages owed under the CWPL, plus liquidated damages in an amount equal to their unpaid wages;

i.      Judgment awarding Plaintiffs and the Putative Class Members all unpaid wages, liquidated damages, compensatory damages, and other penalties available under the FLSA, RIMWA, RIPWA, CMWA, and CWPL;

j.      An Order awarding attorney's fees, costs, and expenses;

k.      Pre- and post-judgment interest at the highest applicable rates; and

l.      Such other and further relief as may be necessary and appropriate.

Dated: August 18, 2023

Respectfully submitted,

**HAYBER MCKENNA & DINSMORE LLC**

By: _____
Richard E. Hayber
Fed Bar No. ct11629
750 Main Street, Suite 904
Hartford, Connecticut 06103
Tel: (860) 522-8888
Fax: (860) 218-9555
rhayber@hayberlawfirm.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Tel: (361) 452-1279
Fax: (361) 452-1284
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBER**